## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

ROCKY MOUNTAIN TWIST, dba JORE
CORPORATION, a Delaware
Corporation,

                                 CV 07-119-M-DWM-JCL

          Plaintiff,

    vs.

                                 FINDINGS & RECOMMENDATION
                                 OF UNITED STATES
                                 MAGISTRATE JUDGE

TROY BRACKEY, an individual,
GREG HOBBS, an individual,               and
JEFFREY M. HEUTMAKER, an
individual, and ABSOLUTE CUTTING     ORDER
TOOLS, LLC, a Montana limited
liability company,

          Defendants.

_____

This post-employment dispute between Rocky Mountain Twist, d/b/a Jore Corporation ("Jore") and three former employees comes before the Court on several pretrial motions. Having considered the briefs and materials of record, together with the argument presented at the hearing held, the Court enters the following:

### RECOMMENDATION

**IT IS RECOMMENDED** that:

1) Defendants' Motion to Dismiss be **GRANTED** with respect to Jore's state law claims and **DENIED** with respect to Jore's federal claims; and

2)  Plaintiff's Motion for Preliminary Injunction be **DENIED.**

PAGE 1

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

## ORDER

**IT IS ORDERED** that:

1) Plaintiff's Motion for Expedited Discovery is **DENIED AS MOOT,** subject to renewal if the Court does not dismiss Jore's state law claims as recommended; and

2) Defendants' Motion for Protective Order is **DENIED AS MOOT,** subject to renewal if the Court does not dismiss Jore's state law claims as recommended.

DONE and DATED this 14th day of February, 2008

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

## RATIONALE

## I.  MOTION TO DISMISS

### A.  Background

The following facts are taken from Jore's complaint and assumed to be true for purposes of evaluating Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction.[1]  *Wah Chang v. Duke Energy Trading and Marketing, LLC,* 507 F.3d 1222, 1224 n. 1 (9th Cir. 2007).

Jore is a Delaware corporation that manufactures power tool accessories and has its principal place of business in Lake County, Montana.  Compl. ¶¶ 4, 11 (Sept. 26, 2007).  Montana residents Troy Brackey, Greg Hobbs, and Jeffrey Heutmaker were all at one time employed by Jore.  Compl. ¶¶ 1, 5, 11.  Heutmaker worked as Jore's Vice President of Strategic Initiatives from 1999 to 2001.  Compl. ¶ 3.  More recently, Jore employed Hobbs as its Manufacturing Engineering Manager and Brackey as its Accounting Manager from March 2003 and June 2006, respectively, until their separation from employment on September 5, 2007.  Compl. ¶¶ 10.

When they first began working for Jore, Hobbs, and Brackey each signed a written personnel agreement pursuant to which they agreed to "preserve, at all times during and after [their] employment, the confidentiality of all proprietary information

---

[1] A "Rule 12(b)(1) attack[] on jurisdiction can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint." *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  Where, as here, a defendant "in its motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) asserts that the allegations in the complaint are insufficient to establish subject matter jurisdiction as a matter of law (to be distinguished from a claim that the allegations on which jurisdiction depends are not true as a matter of fact), [the Court] take[s] the allegations in the plaintiff's complaint as true." *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005).

and trade secrets of Jore...." Compl. ¶ 16a. Hobbs and Brackey also agreed to "refrain, during [their] employment, from engaging in any business or activity that compete[d], or involve[d] [them] in any conflict of interest, with any actual or potential business of Jore, or that otherwise interfere[d] with the full, faithful and efficient discharge of [their] employment duties, unless [they] disclosed such business or activity in full to Jore and [] obtained Jore's written approval for such business or activity." Compl. ¶ 16b. The personnel agreement also prohibited Hobbs and Brackey from "planning or organizing any business or activity which competes, or will compete, with the business carried on or intended to be carried on by Jore, or combining or conspiring with any other employees of Jore for the purpose of organization of such competitive business activity." Compl. ¶ 17.

Jore alleges that Brackey and Hobbs violated the terms of their respective personnel agreements by secretly establishing a competitive business entity known as Absolute Cutting Tools, LLC ("Absolute") while they were still employed by Jore. Compl., ¶¶ 1, 20-23. Specifically, Jore claims that during the course of their employment, Brackey and Hobbs investigated the use of carbide technology and threaded adaption processes and falsely represented to Jore that those processes would not be viable. Compl. ¶ 20. According to Jore, Brackey and Hobbs had actually "planned for over a year to terminate their employment with Jore

PAGE 4

and to open Absolute as a competitive business," and had to that end "been creating and marketing the carbide and threaded adaption processes for use by Absolute." Compl. ¶¶ 19, 20. Jore claims that, during the course of their employment, Brackey and Hobbs used "Jore's confidential information and trade secrets to obtain business on behalf of Absolute,...contacted Jore's customers for the purpose of soliciting business for Absolute,...and obtained corporate status for Absolute." Compl. ¶¶ 21-23. Jore also alleges that Hobbs attempted to delete from Jore's computer system various files containing information about Jore's customer accounts. Compl. ¶ 24.

Although Heutmaker was by then no longer an employee, Jore claims he aided and abetted Brackey and Hobbs by "reviewing marketing materials prepared for Absolute, reviewing Jore's personnel agreement, and becoming the only named principal of Absolute, all while Brackey and Hobbs remained employed by Jore and with full knowledge of the duties" they owed their employer. Compl. ¶ 3.

Citing the above, Jore commenced suit against Brackey, Hobbs, Heutmaker, and Absolute, in September 2007. Jore asserts state law claims against Brackey and Hobbs for breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information, fraud, and interference with prospective business advantage. Jore also asserts two federal statutory claims against Hobbs, and a single state law

claim against Heutmaker for aiding and abetting breach of
fiduciary duty.  In addition, Jore levels state law claims
against Absolute for misappropriation of trade secrets and
confidential information, fraud, and interference with
prospective business advantage.

Because the parties are not diverse, Jore predicates
jurisdiction on the federal question presented by its two
statutory claims against Hobbs.  Defendants challenge the
propriety of Jore's doing so, and have moved to dismiss the
complaint for lack of subject matter jurisdiction pursuant to
Fed. R. Civ. P. 12(b)(1).  Also pending are Jore's motions for
preliminary injunction and expedited discovery, as well as
Defendants' motion for a protective order.  Because it is largely
dispositive, the Court turns first to Defendant's motion to
dismiss.

**B.  Discussion**

Defendants argue as a threshold matter that the Court lacks
subject matter jurisdiction over Jore's two federal question
claims because they are immaterial and have been asserted for the
sole purpose of obtaining federal jurisdiction.  Assuming the
Court agrees and dismisses Jore's sole federal claims, Defendants
note that the Court will then lack original jurisdiction and
maintain that the Court should correspondingly decline to
exercise supplemental jurisdiction over Jore's remaining state

PAGE 6

law claims.  If, on the other hand, the Court concludes it has subject matter jurisdiction over Jore's federal claims, Defendants take the position that it should still refuse to exercise supplemental jurisdiction over Jore's state law claims because they predominate over the two original jurisdiction claims.  Failing all else, Defendants maintain that dismissal is appropriate under 28 U.S.C. § 1367(c)(4), which gives the Court discretion to dismiss supplemental claims "in exceptional circumstances [where] there are other compelling reasons for declining jurisdiction."  The Court will address each of these arguments in turn, beginning with the question of whether Jore's federal claims are sufficient to confer subject matter jurisdiction.

        1.  Original Jurisdiction

    The federal question statute, 28 U.S.C. § 1331, confers jurisdiction over claims arising under the "Constitution, laws or treaties of the United States."  Of the many claims set forth in Jore's complaint, two arise under the laws of the United States. In Count VI, Jore alleges that Hobbs violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by "knowingly causing the transmission of a command, and as a result of such conduct, intentionally caused damages, without authorization, to a computer used in interstate commerce and communication."[2]  Compl.

_____

        [2] The Computer Fraud and Abuse Act, 18 U.S.C. § 1030 is a criminal statute that affords a private right of action.  18 U.S.C.

PAGE 7

¶ 56.  In Count VII, Jore claims that Hobbs violated the Stored Communication Act, 18 U.S.C. § 2701, et seq., by "intentionally and without authorization access[ing] Jore's computer system," exceeding "his level of authorization to Jore's computer system," and thereby obtaining and altering "electronic communications while they were in electronic storage."[3]  Compl., ¶¶ 60-63.

"Jurisdictional dismissals in cases premised on federal question jurisdiction are exceptional and must satisfy the requirements specified in *Bell v. Hood*, 327 U.S. 678 (1946))." *Sun Valley Gasoline, Inc. v. Ernst Enters, Inc.*, 711 F.2d 138, 140 (9th Cir. 1983).  Where, as here, a plaintiff asserts a claim invoking federal question jurisdiction, dismissal for lack of subject matter jurisdiction is proper only if the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous."  *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (*quoting Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).  Whether the federal claim "turns out to be 'well founded in law and fact'...is beyond the scope of [this] threshold jurisdictional review."  *Sarei v. Rio Tinto,*

---

§ 1030(g).

[3]  As does the Computer Fraud and Abuse Act, the Stored Communication Act provides for a private right of action.  18 U.S.C. § 2707.

*PLC*, 487 F.3d 1993, 1200 (9th Cir. 2007) (*quoting Poulos v. Caesars World, Inc.*, 379 F.3d 654, 662 n.2 (9th Cir. 2004)).

Citing the first prong of the test set forth by the United States Supreme Court in *Bell*, Defendants contend that this Court lacks subject matter jurisdiction over Jore's federal statutory claims because they are "immaterial and made solely for the purpose of obtaining jurisdiction." *Bell*, 327 U.S. at 682-83.[4] Specifically, Defendants maintain that Jore's statutory claims against Hobbs are "immaterial" to its many state law claims because there is no factual nexus between those federal claims and its state law claims of employment-related misconduct.

In other words, Defendants effectively take the position that the term "immaterial" as used by the *Bell* court means "irrelevant." Defendants fail to cite any legal authority supporting such an interpretation, however, relying instead on the disjunctive language of the *Bell* test itself. Because the *Bell* court stated dismissal is appropriate only where a federal claim is both "immaterial and made solely for the purpose of obtaining jurisdiction <u>or</u> where such claim is wholly insubstantial and frivolous," Defendants maintain it would conflate the test's disjunctive prongs to construe "immaterial"

───────────────

[4] Defendants do not argue that Jore's are "wholly insubstantial and frivolous."

as meaning "insubstantial and frivolous." *Bell*, 327 U.S. at 682-
83 (emphasis added).

Despite the disjunctive terms employed by the *Bell* court,
the United States Supreme Court has more recently indicated that
determining whether a federal claim is "immaterial and made
solely for the purpose of obtaining jurisdiction" involves asking
whether that claim is "patently without merit." *Mt. Healthy City
School Dist. Bd. Of Ed. v. Doyle*, 429 U.S. 274, 279 (1977).
Whether a claim fits within the first prong of the *Bell* test
"turns on whether the complaint 'really and substantially'
invokes a dispute over federal law." *Creel v. City of Atlanta*,
399 F.2d 777, 778 (5th Cir. 1968).

Jore's statutory claims against Hobbs satisfy this test.
Its claims that Hobbs deleted or altered computer-stored
information in violation of federal law "'really and
substantially' invoke[] a dispute over federal law." *Creel*, 399
F.2d at 778.  Jore's federal claims do in fact rest upon federal
statutory law, and as such "really and substantially involve a
controversy within the jurisdiction of the court." *The Fair v.
Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913).  This Court
cannot say based on a review of Jore's complaint that its federal
claims are "patently without merit." *Mt. Healthy*, 429 U.S. at
279.  Even if Jore's state law claims were to fail as a matter of
law, its complaint alleges two federal question claims that

PAGE 10

present a real and substantial dispute as to whether Hobbs violated the two federal statutes cited therein.  That Jore's legitimate federal claims may not pertain to the other named defendants is more properly considered when determining the propriety of exercising supplemental jurisdiction, and will be addressed accordingly.

Because the two federal statutory claims cannot be said to be "immaterial" within the contemplation of *Bell*, Defendant's motion to dismiss Counts VI and VII for lack of subject matter jurisdiction should be denied.

Having so concluded, the Court turns next to Defendants' argument that the Court should decline supplemental jurisdiction over Jore's several state law claims.

## 2.  Supplemental Jurisdiction

Where, as here, the court has original jurisdiction over one or more federal claims, the court shall also "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Supplemental jurisdiction over state claims exists when a "federal claim is sufficiently substantial to confer federal [question] jurisdiction and there is 'a common nucleus of operative fact between the state and federal claims.'"  *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995) (*quoting Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991)).

Whether to exercise supplemental jurisdiction is within the discretion of the court pursuant to 28 U.S.C. § 1367(c).  The court may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors, [] including the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims...." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997).  Section 1367(c) sets forth the parameters for the exercise of that discretion, authorizing the district court to decline supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

"[U]nless a court properly invokes a section 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted." *Executive Software North America, Inc. v. United States District Court,* 24 F.3d 1545, 1556 (9th Cir. 1994).

Defendants in this case urge the Court to decline supplemental jurisdiction over Jore's state law claims on the basis that they substantially predominate over its federal claims within the meaning of Section 1367(c)(2).  The "substantially predominate" standard comes from the United States Supreme

Court's decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). *See Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3rd Cir. 1995). As the *Gibbs* court explained, "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726. If it appears to the court "that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." *Gibbs*, 383 U.S. at 727.

In other words, declining jurisdiction under Section 1367(c)(2) would be appropriate "where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3rd Cir. 1995). It can similarly be said that state claims predominate over federal claims where "the federal claims involve a technical or other issue that is peripheral to the state claims." *SST Global Technology, LLC v. Chapman*, 270 F.Supp.2d 444, 456 (S.D.N.Y. 2003).

The balance of all these factors, including those identified by the Supreme Court *Gibbs*, weighs in favor of declining supplemental jurisdiction over Jore's state law claims under Section 1367(c)(2). First, there can be no serious question that Jore's six state law claims, and the issues raised therein, are

broader in scope than its two federal claims.  Jore's state law claims are leveled variously against multiple defendants and arise out of a wide range of alleged conduct occurring over a several month period.  Jore's federal claims, in contrast, pertain only to Hobbs and the alleged destruction or alteration of computer-stored information in violation of two specific statutes.

Just as the issues raised in Jore's state law claims are broader in scope than those raised by way of its federal claims, so too are the damages sought.  Jore requests nearly five million dollars in compensatory and punitive damages on its state law claims, but alleges only "in excess" of $6,000 in damages on its federal statutory claims.  Because Jore seeks more comprehensive damages by way of its state law claims, this factor also suggests that declining supplemental jurisdiction would be appropriate.

This Court is satisfied based on a careful review of Jore's complaint that its comprehensive state claims constitute "the real body of [the] case."  *Gibbs*, 383 U.S. at 727.  The overriding theory of Jore's case is that "Brackey and Hobbs secretly established Absolute, a competitive business entity, during their employment at Jore," in breach of their respective personnel agreements and in violation of their fiduciary duties.  Compl. ¶ 1.  Also at the heart of Jore's complaint is its claim that Heutmaker aided and abetted Brackey and Hobbs, who allegedly misappropriated Jore's trade secrets.  Compl. ¶ 1.  While Jore's federal claims may be said to derive from the same set of operative facts in the sense that they too arise out of Hobbs'

acrimonious relationship with his former employer, they are discrete statutory claims on the periphery of Jore's core state law claims.  Because Jore's federal statutory claims relate only to Hobbs' alleged conduct in deleting or altering computer-stored information, specifically e-mails, they are nothing more than "appendages" to Jore's far more comprehensive state law claims, and can be resolved separately .  *Gibbs*, 383 U.S. at 727.

That Jore levels its federal claims against only one of the four named defendants is significant, and provides further support for declining supplemental jurisdiction.  *See Jones v. Haga*, 2006 WL 2038006, *7 (D. Colo. July 17, 2006) (concluding that state law claims could fairly be said to predominate "where only one of 11 claims involves a federal question and where that claim is asserted by only one of four plaintiffs and against only a single defendant not named in any other claim"); *Ortmayer v. Union Bank of Calif., N.A.*, 2005 WL 433703, *6 (D. Or. February 24, 2005) (concluding that state claims predominated where only one of seven claims was a federal claim and that claim was asserted against only one of five defendants).  It is fair to say that Jore's federal claims are largely peripheral to its state law claims, relating as they do to isolated actions by a single defendant.

For the reasons set forth above, and because the *Gibbs* factors are all satisfied, the Court concludes that Jore's state claims substantially predominate over its federal claims.  While the court's "discretion to decline to exercise supplemental

jurisdiction is triggered by the presence of one of the
conditions in § 1367(c)," such as the fact that Jore's state law
claims substantially predominate, that discretion is nevertheless
"informed by the *Gibbs* values of economy, convenience, fairness,
and comity."  *ACRI v. Varian Assoc., Inc.*, 114 F.3d 999, 1001
(9th Cir. 1997).  Accordingly, in addition to concluding that
Jore's state claims substantially predominate over its federal
claims, this Court must also weigh the "economy, convenience,
fairness, and comity" of declining supplemental jurisdiction."
*Executive Software*, 24 F.3d at 1557.

The first of these four factors, judicial economy, is
essentially neutral, particularly in light of the fact that this
litigation is in its initial stages.  The pending motions are the
first substantive matters to come before the Court, and a
pretrial schedule has yet to be established.  Had this Court
already committed "substantial judicial resources," such that
"sending the case to another court [would] cause a substantial
duplication of effort," then judicial economy might best be
served by exercising jurisdiction over Jore's state law claims.
*Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 746 (11th
Cir. 2006) (*quoting Graf v. Elgin, Joliet and Eastern Ry. Co.*,
790 F.2d 1341, 1347-48 (7th Cir. 1986)).  But because this
litigation is in its initial stages, there is no indication that
judicial economy would be significantly affected one way or the
other by the Court's decision on whether to exercise supplemental
jurisdiction.

With regard to the second factor, the convenience of the parties weighs in favor of declining supplemental jurisdiction and allowing Jore's state law claims to go forward in state court.  Jore's principal place of business is in Lake County and many of the possible witnesses in this case would likely be located there as well.  By all indications, it would be more convenient for Jore to litigate its state law claims in Lake County than to proceed in federal court here in Missoula County.

The third factor informing this Court's analysis is whether it would be fair to the parties to decline supplemental jurisdiction and dismiss Jore's state law claims.  Jore took the position at oral argument that it would be unfair for the Court to do so, pointing to the fact that it commenced suit here more than four months ago.  According to Jore, it would be unfair for the Court to dismiss the state law claims, thereby requiring Jore to begin all over again in state court.  As noted above, however, this litigation is still in its early stages.  And, more importantly, Jore assumed the risk of such an outcome by choosing to assert its state law claims in federal court.  While Jore may be less than entirely happy with the notion of having to now pursue the those claims in state court, it will have a fair opportunity to do so.  For these reasons, fairness to the parties does not require that this Court exercise supplemental jurisdiction over Jore's state law claims.

Finally, respect for comity weighs in favor of allowing Jore's state law claims to proceed in state court.  *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided

both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.")  On balance, considerations of judicial "economy, convenience, fairness, and comity" weigh in favor of declining supplemental jurisdiction over Jore's state law claims.

In sum, the Court should decline supplemental jurisdiction under Section 1367(c)(2) because Jore's several state law claims "substantially predominate" over its federal statutory claims "in terms of proof,...the scope of the issues raised, [and] the comprehensiveness of the remedy sought."[5]  For all of the above reasons, Defendants' motion to dismiss Jore's federal claims, set forth in Counts VI and VII of the complaint, should be denied. Defendants' motion to dismiss Jore's state law claims, set forth in Counts I, II, III, IV, V, and VIII of the complaint should be granted.  Jore's state law claims should "be dismissed without prejudice and left for resolution to state tribunals." *Gibbs*, 383 U.S. at 726.

## II.  MOTION FOR PRELIMINARY INJUNCTION

Also pending before the Court is Jore's motion for a preliminary injunction.  As the United States Supreme Court has recognized, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A.

---

[5] Having so decided, this Court need not address Defendants' argument that dismissal is likewise appropriate under 28 U.S.C. § 1367(c)(4).

Miller, & M. Kane, *Federal Practice & Procedure* § 2948, pp. 129-30).

To obtain preliminary injunctive relief, the moving party must establish "either (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) serious questions going to the merits and a balance of hardships strongly favoring the plaintiffs." *Paramount Land Co. LP v. California Pistachio Com'n*, 491 F.3d 1003, 1008 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Paramount Land Co.*, 491 F.3d at 1008 (*quoting Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000). As such, they "are not separate tests but rather 'outer reaches of a single continuum.'" *Paramount Land Co.*, 491 F.3d at 1008 (*quoting Los Angeles Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).

Jore asks the Court to prohibit Brackey, Hobbs, and Absolute[6] "from misappropriating Jore's confidential, proprietary and trade secret information" in connection with operating Absolute. Pl.'s Br. in Support of Mot. for Prelim. Inj. 2 (Nov. 8, 2007). Specifically, Jore asks that the Court preliminarily enjoin Brackey, Hobbs, and Absolute as follows:

---

[6] Jore does not request any preliminary injunctive relief as to Heutmaker.

1.    From using, disclosing, disseminating, relying on or in
      any manner misappropriating Jore's confidential,
      proprietary, or trade secret information;

2.    Should be required to return to Jore all confidential,
      proprietary, and/or trade secret information in their
      possession, custody or control;

3.    Should be prohibited from utilizing the manufacturing
      technology known as Threaded Adaption, Quick Change
      Adaption, and from utilizing Grinding Machines for High
      Speed Steels and Carbide Adaption;

4.    Should be prohibited from interfering with Jore's
      contractual or business relations with any of its
      current or prospective customers; and

5.    Should be prohibited from soliciting business from, or
      doing business with, any Jore customer with whom Hobbs
      or Brackey transacted business during their employment
      at Jore.

      Pl.'s Memo. in Support, 16.

Jore claims it will be irreparably injured "in a number of
ways" if the Court does not grant it the injunctive relief it
seeks.  Memo. in Support, 15.  Specifically, Jore claims
irreparable injury "will result from its inability to capitalize
on the customer relationships Brackey and Hobbs were able to
establish with Jore's customers during their employment at Jore."
Memo. in Support, 15.  Jore also alleges that it will be
irreparably harmed if Brackey and Hobbs are allowed to pursue
their competitive business using the "carbide adapted products
that Jore has been working for years to develop," which they
would only be able to accomplish "through the fraudulent
misappropriation of Jore's confidential, proprietary, and trade
secret information."  Memo. in Support, 15.

      Assuming the Court declines to exercise supplemental
jurisdiction over Jore's several state law claims, the only

claims remaining for decision will be Jore's two federal statutory claims against Hobbs.  Because Hobbs would then be the sole remaining defendant, Jore's motion for injunctive relief will be moot to the extent it seeks to enjoin Brackey and Absolute from engaging in any of the above-listed activities and should be denied in that regard.

Even with respect to Hobbs, Jore's request for preliminary injunctive relief will likewise be rendered moot to the extent it pertains solely to Jore's state law claims, which will no longer be part of this case.  For purposes of determining the extent to which Jore's motion would be rendered moot on this basis, the question is whether Jore's request for a preliminary injunction relates in any substantive way to Jore's federal claims against Hobbs.

Such a link between the irreparable injury asserted, injunctive relief sought, and claims asserted is necessary in light of the purpose of a preliminary injunction, which is to preserve the status quo pending resolution of the action on the merits.  "Because the purpose of preliminary injunctive relief is to maintain the status quo or prevent irreparable injury pending the resolution of an underlying claim on the merits, the injury claimed in a motion for such relief must necessarily relate to the conduct alleged and permanent relief sought in a plaintiff's complaint."  *Africa v. Vaughn*, *Civ. No. 96-64*, 1996 WL 677515, 1 (E.D. Pa. Nov. 21, 10996) *(citing Devose v Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)); *Stewart v. U.S. Immigration & Naturalization Serv.*, 762 F.2d 193, 198-99 (2nd Cir. 1985); *Penn*

PAGE 21

*v. San Juan Hospital*, 528 F.2d 1181, 1185 (10th Cir. 1975)).  The
propriety of injunctive relief thus depends on whether Jore can
demonstrate that it faces the possibility of irreparable injury
as to its statutory claims if Hobbs is not preliminarily enjoined
from engaging in the five activities identified in its motion for
preliminary injunction.

To answer this question, the Court turns first to the
allegations in the Complaint.  Jore's first statutory claim
arises under the Computer Fraud and Abuse Act, and alleges that
"[i]n the course of deleting computer files from Jore's computer
system, defendant Hobbs knowingly caused the transmission of a
command, and as a result of such conduct, intentionally caused
damage, without authorization, to a computer that is used in
interstate commerce and communication."  Compl. ¶ 56.  Jore
asserts that "[a]s a result of Hobbs' actions, Jore has suffered
damage to its computer system, the amount of which exceeds
$5,000."  Compl. ¶ 57.  Jore's second statutory claim arises
under the Stored Communication Act, and alleges that "Hobbs
intentionally and without authorization accessed Jore's computer
system at the time of his separation from employment with Jore."
Compl. ¶ 60.  According to Jore, "Hobbs intentionally exceeded
his level of authorization to Jore's computer system during and
at the termination of his employment," and in doing so "obtained
and altered electronic communications while they were in
electronic storage."  Compl., ¶¶ 61-62.

In essence, Jore alleges that Hobbs damaged its computer in
the course of deleting files, and altered certain electronic

PAGE 22

communications without authorization.  Jore alleges that the
information Hobbs deleted related to its customer accounts.
Compl. ¶ 24.  Neither of these statutory claims says anything
about misappropriating trade secrets or the improper use of
Jore's manufacturing technology, which form the basis for the
first three categories of injunctive relief sought.  Although
Jore claims it will be irreparably harmed if Hobbs is allowed to
pursue a competing business venture using misappropriated trade
secrets and Jore's manufacturing technology, that alleged injury
does not relate to the conduct alleged in Jore's statutory
claims.

        To the contrary, all of the injunctive relief sought relates
to Jore's state law claims.  For example, Jore alleges in its
breach of contract claim that Hobbs breached the terms of his
employment agreement by "using Jore's confidential information
and trade secrets without consent" and creating a business while
he was still employed by Jore "that directly and indirectly
competes with Jore."  Compl. ¶ 29.  Jore's request to preclude
Hobbs from using certain manufacturing technology, using or
misappropriating its "confidential, proprietary, or trade secret
information," and for the return of such information clearly
relates to the allegations set forth in the breach of contract
claim.

        Similarly, Jore's request that the Court preliminarily
enjoin Hobbs from soliciting business from Jore's customers and
interfering with its customer relationships pertains to its claim
that Hobbs breached various fiduciary duties by, among other

things, "diverting Jore's customers to do business with [his] new company."  Compl., ¶ 33.  Jore has presumably requested such relief in an effort "to preserve the status quo pending a determination" on the merits of its various state law claims. *Dep't of Parks and Recreation for State of Calif. v. Bazaar*, 448 F.3d 1118, 1124 (9th Cir. 2006).  Assuming the Court declines supplemental jurisdiction over those claims, however, Jore's motion for preliminary injunction will be moot because the relief it seeks bears no significant relationship to its federal claims. For all of the above reasons, Jore's motion for a preliminary injunction should be denied, subject to renewal in the event the Honorable Donald W. Molloy does not dismiss the state law claims as recommended.